UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDMUND J. SZARZYNSKI,

        Plaintiff,                **DECISION**

      v.                        **and ORDER**

ROCHE LABORATORIES, INC.,          07-CV-6008

        Defendant.
_____

## INTRODUCTION

Plaintiff Edmund J. Szarzynski, ("plaintiff"), brings this action asserting claims of age discrimination and retaliation pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* ("ADEA"), the New York State Human Rights Law, Executive Law §290 *et seq.* ("NYSHRL") and Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.), against his employer Roche Laboratories, Inc. ("defendant" or "Roche"). Specifically, plaintiff alleges he was discriminated against on the basis of age, and retaliated against after complaining of the alleged discriminatory treatment. Defendant denies plaintiff's allegations, and moves for summary judgment dismissing plaintiff's Amended Complaint on grounds that plaintiff does not meet the elements of a prima facie case of discrimination or retaliation. According to the defendant, Szarzynski cannot establish any adverse employment action, or that any action taken by Roche had anything to do with plaintiff's age or protected activity. In addition, defendant argues that even if Szarzynski were able to prove a prima facie case, he cannot demonstrate that Roche's true reason for any action taken was a

pretext for intentional discrimination or retaliation. Further, defendant contends that plaintiff's claims for emotional distress and for punitive damages are without merit and should be dismissed.

For the reasons set forth below, I grant defendant's motion for summary judgment, and dismiss plaintiff's Amended Complaint in its entirety.

## BACKGROUND

As a threshold matter, defendant points out that plaintiff submitted a Counter Statement of Undisputed Facts in opposition to defendant's motion for summary judgment ("Counter Statement"). <u>See</u> October 30, 2009 Declaration of Susan C. Roney ("Oct. Roney Decl."), ¶16. Defendant argues that since plaintiff has not cross moved for summary judgment, he may not submit a Counter Statement and defendant respectfully request that it be stricken from the record on this motion. <u>See</u> <u>id.</u>, ¶17. Further, defendant argues that plaintiff's facts are supported with nothing more than "his own self-serving unsupported allegations made at his deposition, in his interrogatory responses, in his new affidavit, and the...previously [un]disclosed, affidavits of Jeremy Knopp."[1] <u>See</u> <u>id.</u>, ¶20. With regard to the

---

[1] Jeremy Knopp ("Knopp") is a former employee of Roche. In plaintiff's opposition to the motion for summary judgment, he introduced two affidavits by Knopp, dated January 2007 and 2006. However, plaintiff produced neither one of these affidavits during the sixteen months of discovery. Defendant served a document request dated November 2007 asking for "[a]ll statements Plaintiff has received from any person in any form." Plaintiff did not produce the Knopp affidavits he has now disclosed even though both affidavits predate the date of the document request from defendant. In any event, plaintiff had a duty to supplement his responses. <u>See</u> Fed.R.Civ. P. 26(e)(1). The Second Circuit has explained that "a court may...strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." <u>Hollander v. American Cyanamid Co.</u>, 172 F.3d 192, 198 (2d Cir.1999). The <u>Hollander</u> Court also held that the district court had acted within its discretion by striking portions of the affidavit that the court described as "more resembl[ing] an adversarial memorandum than a bona fide affidavit." 172 F.3d at 198. "Alternatively, a court may, in considering a motion for summary judgment, simply decline to consider those aspects of a supporting

assertions in plaintiff's Counter Statement that are unsupported by the record, the Court "in its analysis of the motion[s] for summary judgment, will only consider relevant evidence that is admissible pursuant to the...frame-work established in Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1." Morris, 37 F.Supp.2d at 569; see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir.2001) (Court of Appeals held that "Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported by the record.")

"Rule 56.1 of the Local Civil Rules...requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to admissible evidence of record supporting each such fact." See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir.2003) (citing Local Rule 56.1(a), (d)); see also W.D.N.Y. Loc. R. Civ. P. 56.1(a). Defendant has complied with this rule. "The papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." See id. 56.1(b). "All

---

affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." Doe v. The National Board of Podiatric Med. Exam., 2004 WL 912599, at *4 (S.D.N.Y.2004); see also Wyler v. U.S., 725 F.2d 156, 160 (2d Cir.1983) ("An affidavit of the opposing [party] which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight"). "The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." Searles v. First Fortis Life Ins. Co., 98 F.Supp.2d 456, 461 (S.D.N.Y. 2000). Based on well established case law, this Court will disregard plaintiff's submissions, which are inappropriate. Thus, both Knopp's affidavits will not be considered. See DeSimone v. JP Morgan/Chase Bank, 2004 WL 2978011, at *4 (S.D.N.Y. 2004) ("[i]n this opinion, any inappropriate portions of the Plaintiff's submissions have been disregarded, and this Court's analysis relies upon admissible evidence"); see also Morris v. Northrop Grumman Corp., 37 F.Supp. 2d 556, 569 (E.D.N.Y.1999) ("[r]ather than scrutinizing each line...discussing whether they contain conclusory allegations ...or hearsay...the Court, in its analysis of the motion..., will only consider relevant evidence that is admissible").

material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." See id. 56.1(c). In other words, the moving party must set forth the material facts that it contends are not in dispute, whereas the non-moving party must then set forth the material facts that he contends are in dispute (i.e., material facts as to which he contends that there is a genuine issue). Accordingly, while the Court will not strike plaintiff's Counter Statement, having undertaken an independent review of the record in this case, only the material undisputed facts supported by the record are set forth herein.

I. **Plaintiff's Employment at Roche and Relationship With Sullivan**

In 1997 plaintiff, Edmund J. Szarzynski[2] began working as a pharmaceutical products sales representative for Roche in Texas. However, in 1999 and 2003 plaintiff's positions were eliminated due to workforce reductions. In early 2004 plaintiff accepted an Acute Care pharmaceutical sales representative position at Roche in Rochester, New York. In January 2005, plaintiff started working as a "Medical Representative" in Rochester in anticipation of the launch of Boniva®, a new osteoporosis drug manufactured by Roche. Plaintiff also promoted Tamiflu® during the flu season, but promoting Boniva® comprised the bulk of his responsibilities. Plaintiff's territory constituted "Rochester-East," which included Brighton, Pittsford,

_____

[2]Plaintiff was born on June 23, 1945.

Penfield and Newark. There were nine representatives in plaintiff's division in 2005, six of them were over the age of 40.

Boniva was co-promoted with Glaxosmithkline ("GSK"), and as such two GSK medical representatives promoted Boniva® in plaintiff's territory. During the relevant time period, January 2005 to January 2006, plaintiff's direct supervisor was Division Sales Manager Lonny Sullivan ("Sullivan"). However, since November 2004, James Burke ("Burke") has been the Regional Sales Director in charge of the entire Mid-Atlantic Region, which includes New York State, and was Sullivan's supervisor.

Plaintiff met his new supervisor, Sullivan during a Roche national meeting to coordinate the Boniva® launch in Las Vegas in January 2005. During their first meeting in Las Vegas, plaintiff testified that Sullivan believed that he had been disrespectful by failing to shake his hand. On March 1, 2005, Sullivan wrote a letter to plaintiff, which was copied to Human Resources ("HR") and Burke, indicating that plaintiff failed a required quiz which tested his knowledge of osteoporosis, and would be required to retake it. The letter also stated that plaintiff's call activity for the first trimester was below expectations. Plaintiff responded by letter dated March 12, 2005 requesting that the March 1, 2005 letter be removed from his file. However, Burke indicated that it could not be removed because HR considered it an official document.

During his deposition, plaintiff testified as follows:

Q.   Do you have any reason to believe that Mr. Sullivan was
building a record against you based on your – on that March 2005
letter, that that had anything to do with your age?
A.   I – at that time, no. Subsequent to that, yes.
Q.   Because of the comment that was attributed to Mr. Sullivan?
A.   Yes.

See June 29, 2009 Declaration of Susan C. Roney ("June Roney Decl."),

Ex. D. Plaintiff's testimony indicates that plaintiff did not believe

that the March 1, 2005 letter incident was instigated by

discriminatory animus until after hearing about a comment allegedly

made by Sullivan in August 2005.

In August 2005 plaintiff questioned Sullivan concerning their

allegedly strained relationship. Indeed in an August 2005 Field

Coaching Report,[3] plaintiff summarized the situation to Sullivan as

follows:

    the false impression of our first meeting 2005 was
    uncovered on [8/9/05]. Uncovering that fallacy on Tuesday
    explained your comment made on Monday that I "have been a
    thorn in your side since day one." It also explained your
    negative attitude and behavior towards me. Hopefully you
    are no longer laboring under that completely false
    impression that you experienced during our first meeting in
    Las Vegas. Should you wish to re-visit that episode, feel
    free to bring it up for discussion and I will further
    disabuse your interpretations of our initial meeting.

See June Roney Decl., Ex. E. Defendant points out that nowhere in

this account of plaintiff's and Sullivan's strained relationship did

plaintiff ever state that their confrontation was fueled in any way

by age-related animus.

---

[3]Once a month Szarzynski and Sullivan would agree to meet and Sullivan would accompany plaintiff on
that day's visits to physicians. These ride-along trips are memorialized on various Field Coaching Reports. In the
Field Coaching Reports for July, August and October 2005, plaintiff refutes Sullivan's comments and criticisms.

## II.  __Plaintiff's Performance Improvement Plan__

Sales representatives were ranked based on the market share that Boniva® had of the osteoporosis drug market within the representative's territory. Plaintiff was ranked last in the Mid-Atlantic region, 80 out of 80, and 561 out of 576 in the nation, in Boniva® market share for the year 2005 as of August 2005. Plaintiff testified that, although numerically he fell below division averages, he believed that his below average performance was reasonable under the circumstances, because in his territory doctors were slow to adopt new drugs and access was particularly difficult. Based on regional averages, defendant expected representatives to make two calls per month to certain doctors who prescribed osteoporosis drugs, like Boniva®, at a high rate. Defendant classified these doctors as decile[4] 5 to 10. For the relevant year 2005, as of September 2005, plaintiff only made an average 1.1 calls on these high decile doctors. During this same time frame, plaintiff's reach (a measurement of the number of high-decile physicians seen in a month expressed in a percentage), was 46%, which was well below the regional expectation of 85%. In addition, defendant also measured call averages, meaning the number of doctors visited by their representative on a daily basis. Plaintiff also failed to meet the eight calls per day requirement that was the average for Roche

---

[4]"Decile" is defined as a measurement of the specific statistics of a physician in prescribing certain types of drugs, and it is measured on a 1 to 10 scale. The higher the number, the more the physician prescribes the target drug category, in the case of Boniva, the drug category are osteoporosis drugs.

representatives regionally for the same time period, i.e. through September 2005.

Plaintiff was placed on a Performance Improvement Plan ("PIP") based on his performance in 2005 according to certain measurements applied to medical representatives at Roche. On October 11, 2005 plaintiff learned that he would be placed on a PIP during a meeting with Burke and Sullivan. The PIP was designed with input from Sullivan, Burke and Michelle Crocco ("Crocco"), a representative of Roche's HR department. Pursuant to the PIP, plaintiff was required to increase Boniva® sales to a level consistent with his division's average and provide call planning reports to Sullivan. In this regard, plaintiff testified that the goals set out in the PIP were unattainable and that he could not meet the division or regional call averages or percent of market share listed in the PIP. In addition, plaintiff testified that although numerically his performance fell below division averages, his performance was reasonable under the circumstances.[5]

On December 12, 2005, plaintiff met with Sullivan to make changes to the original PIP and the PIP was extended until January 31, 2006. According to the PIP Addendum, plaintiff was given the opportunity to identify sixty specific physicians as targets and concentrate his efforts on these doctors. In a December 26, 2005 letter plaintiff acknowledged that the call requirement outlined in

---

[5]Plaintiff testified as follows:
Q. Did you agree that your current call activity was below the divisional and regional average?
A. Based on arithmetic, yes. Based on the situation, I felt it was reasonable.
See June Roney Decl., Ex. D.

the PIP Addendum was "fair and reasonable." The PIP was ultimately discontinued on January 31, 2006 and plaintiff continues to be a Roche employee to this day.

   III. **Plaintiff's Complaint to Human Resources**

   Plaintiff testified that sometime around August 2005, during a breakfast meeting in the presence of two medical representatives, John Gagne and Michele Dewey, Sullivan allegedly said something to the effect that "in my experience older workers are just hanging around for retirement and need to be constantly challenged." See June Roney Decl., Ex. D. Gagney and Dewey subsequently relayed the comment to plaintiff. During the course of plaintiff's employment at Roche, he was made aware of Roche's complaint procedure and its anti-discrimination and anti-retaliation policies. Nevertheless, plaintiff did not complain to management regarding the alleged comment until after he was informed that he would be placed on a PIP. He did not complain to HR about the comment until November 2005, after the PIP was put in place. Accordingly, it was only in November 2005 that plaintiff complained to HR for the first time about age discrimination. Thereafter, HR investigated plaintiff's allegations and concluded that no age discrimination had occurred. After completing their investigation, Crocco and another HR professional, called plaintiff and sent him a memorandum dated February 28, 2006, memorializing the results of their investigation.

## IV.  Plaintiff's Miscellaneous Complaints

### A.  2005 Performance Rating

Plaintiff's overall performance rating for 2005 was a 5, on a 1 to 6 scale, 6 being the lowest rating.[6] As previously mentioned, plaintiff's rank in the region for Boniva® sales was 80 out of 80. In spite of his low ranking, plaintiff complained that the performance rating Sullivan gave him in 2005 was unfair. In addition, while his market share was low, plaintiff blamed the size of the territory, and Rochester physicians' "wait and see" approach for his poor performance.

### B.  Realignment of Territories

Plaintiff complained that his territory had an excessive number of physician targets and asked Sullivan and Burke to realign it. Sullivan informed plaintiff that realignment would not be looked at until the spring of 2006. Defendant realigned plaintiff's territory in the spring of 2006.

### C.  Variable Pay and Pay Raise

A mathematical formula is used by Roche when awarding its representatives Variable Pay. Roche representatives receive Variable Pay for their promotion of Boniva® based on a formula that takes into account market share and the representative's relative rank as compared to other representatives throughout the nation. According to

---

[6]The Variable Pay Reports and Cross Market Reports were "the foundation for evaluation." See June Roney Decl., Ex. D. Regarding the content of the Cross Market Report for the month of September 2005, plaintiff stated that the sales numbers and statistics contained therein were accurate, including that his rank in the region was 80 out of 80, and that his efforts in promoting Boniva® produced nearly half as many prescriptions as the division, region and national averages. See id.

defendant's policy, which plaintiff was made aware,[7] plaintiff was not eligible for variable pay for the third trimester of 2005 or the first trimester of 2006 because he was on a PIP. Had he been eligible for a Variable Pay award, plaintiff's variable pay for these trimesters would have totaled $3,906.77.[8] Out of the total amount of the variable pay sum plaintiff would have received, only $7.17 would have been attributable to Boniva® sales. Further, plaintiff did not receive a performance-based pay raise at the end of 2005 based on his overall performance.

### D. Incident with GSK Counterpart

In the spring or summer of 2005, plaintiff was visiting a doctor's office with a GSK counterpart.[9] A physician's assistant ("PA") asked him "What have you got?" and plaintiff made a joke to break the ice by replying "Nothing that works, but we found real smart PAs that can make it work." The implication was that Roche's products did not work. The GSK counterpart informed her manager of the incident, and the manager relayed the incident to Sullivan. Sullivan reported the incident to HR. Plaintiff berated Sullivan for talking to HR without consulting him first.

---

[7] Burke referred plaintiff to this policy in a March 23, 2006 e-mail. In addition, this same policy was set forth in the PIP discussed and provided to plaintiff.

[8] $1,458 for the third trimester of 2005 (although none of this amount was due to his efforts promoting Boniva®); $1,770.09 for the first trimester of 2006 for his promotion of Tamiflu, $671.51 for HCV screening and only $7.17 for his promotion of Boniva®.

[9] This is critical since Roche and GSK are partners in promoting Boniva®.

## V.  Emotional Distress Claim

Plaintiff claims that he went to his primary care doctor in October 2005 because he was suffering from anxiety and loss of sleep due to the PIP and fears over losing his job. The doctor offered him medication, but plaintiff testified that he declined it. He was not referred for any other treatment and did not complaint to his physician about anxiety in subsequent visits.

## DISCUSSION

### I.  Defendant's Motion for Summary Judgment

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this showing is made, the nonmoving party may not rely solely on "[c]onclusory allegations, conjecture, and speculation," Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir.2003) (internal

citations and quotation marks omitted), but must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. See Fed.R.Civ.P. 56(e). The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) (citing Fed.R.Civ.P. 56(c)).

## II.  **Plaintiff's ADEA Claim**

The Second Circuit Court of Appeals has held that a plaintiff's ADEA claim is analyzed under the burden-shifting analysis first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973);[10] see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-149 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-511 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-256 (1981). The initial burden lies with the plaintiff. To establish a prima facie case of age discrimination, a plaintiff must show (1) he was within the protected class [age group], (2) his job performance was satisfactory, (3) he was subjected to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of [age] discrimination. See Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir.), cert. denied, 474 U.S. 829 (1985); Kaplan v. Multimedia Entertainment, Inc., 2005 WL 2837561, at *5 (W.D.N.Y.2005); Schnabel

---

[10]The principles governing discrimination claims under the ADEA, Title VII and the NYSHRL are virtually identical, and as such these claims are evaluated using the same analytical framework. See Tarshis v. Riese Org., 66 Fed.Appx. 238, 240 (2d Cir.2003); see also Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001); Ferrante v. American Lung Assoc., 90 N.Y.2d 623, 629 (1997).

v. Abramson, 232 F.3d 83, 87 (2d Cir.2000); see also McDonnell Douglas, 411 U.S. at 802 (stating the prima facie case more generally). Although the Second Circuit has stated that "the burden...that must be met...to establish a prima facie case is minimal," Hollander, 172 F.3d at 199, it has also noted that "[a] jury cannot infer discrimination from thin air." Norton v. Sams Club, 145 F.3d 114 (2d Cir.), cert. denied 119 S.Ct. 511 (1998).

Once a plaintiff has established a prima facie case of discrimination, the defendant must articulate a legitimate, nondiscriminatory rationale for its actions. See Burdine, 450 U.S. at 254. The burden then shifts to the plaintiff to demonstrate that the employer's stated rationale is merely a pretext for discrimination. See McDonnell-Douglas, 411 U.S. at 802; see also St. Mary's Honor, 509 U.S. at 510-11; Reeves, 530 U.S. at 143. Thus, to defeat a defendant's properly supported motion for summary judgment, the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons ("LNDR") proffered by the employer were false, and that more likely than not discrimination was the real reason for the discharge. See Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir.1994).

### A.   Plaintiff has failed to state a prima facie case of Age Discrimination

Plaintiff's Amended Complaint alleges that he was born on June 23, 1945 and as such defendant concedes and this court finds that plaintiff has satisfied the first element of the prima facie case that plaintiff was within the protected age group. However, plaintiff

has failed to establish a prima facie case with respect to the remaining three elements. See McDonnell-Douglas, 411 U.S. at 802.

### 1.  **Plaintiff Was Not Performing His Job Satisfactorily**

While plaintiff is within the protected age group, he nonetheless cannot establish a prima facie case of age discrimination because he cannot demonstrate that he performed his duties satisfactorily. See Bailey v. Frederick Goldman, Inc., 2006 WL 738435, at *4 (S.D.N.Y.2006) (plaintiff had been placed on two PIPs geared at improving her deficient performance and as such the court found that she could not establish a prima facie case of age discrimination because she was not performing her duties satisfactorily). In Bailey, the court concluded that the defendant offered a "trail of performance reviews and improvement plans that document[ed] plaintiff's deteriorating performance." Id. Moreover, the court noted that in evaluating employee performance under this second prong, a court should look to an "employer's legitimate expectations of performance, and may rely on legitimate supervisory evaluations to do so." Id. Likewise here, plaintiff's deficient performance are well-documented. As early as March 2005, plaintiff's performance was below expectations. Indeed, on March 1, 2005, Sullivan wrote a letter to plaintiff and Burke, indicating that plaintiff failed a required quiz which tested his knowledge of osteoporosis. The letter also stated that plaintiff's call activity for the first trimester was below expectations. In addition, sales representatives were ranked based on the market share that Boniva®

had of the osteoporosis drug market within the representative's territory. Plaintiff was ranked last in the Mid-Atlantic region, 80 out of 80, and 561 out of 576 in the nation, in Boniva® market share for the year 2005 as of August 2005. Accordingly, plaintiff cannot demonstrate that he performed his duties satisfactorily.

   **2.   Plaintiff was not subjected to an adverse employment action**

Plaintiff argues that the Court must look at the totality of the events surrounding defendant's conduct. See Pl. Opp. Br. at 12. In addition, plaintiff contends that he was subjected to adverse employment action throughout the duration of Sullivan's supervisory position over him. See id. Further, the failure of defendant to increase his salary and give him variable pay also qualifies as an adverse employment action. See id. at 13.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment. To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000) (citations and footnote omitted). In an age discrimination case, "[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th

Cir.1993), quoted in Galabya, 202 F.3d at 640. As this Court stated in Sank v. City University of New York, 2003 WL 1807142, at *10 (S.D.N.Y.2003), "[w]hile adverse employment actions extend beyond readily quantifiable losses, "not everything that makes an employee unhappy is an actionable adverse action." See Phillips v. Bowen, 278 F.3d 103, 117 (2d Cir.2002) (stating that employee's "trivial complaints about an unpleasant working environment" do not constitute adverse employment actions).

Here, plaintiff has failed to establish that he sustained an adverse employment action. Plaintiff was not terminated and his title was not changed in any way. Even plaintiff's argument regarding not receiving his variable pay is without merit since that was not a decrease in wage or salary or a material loss of benefits. See Galabya, 202 F.3d at 640. For instance, had plaintiff been eligible for a Variable Pay award, plaintiff's variable pay for the third trimester of 2005 would have been $1,458. None of this amount was due to his efforts promoting Boniva®, which comprised the bulk of his responsibilities. Had he been eligible for the first trimester of 2006 for his promotion of Tamiflu® his variable pay would have been $1,770.09, once again not for promoting Boniva®.[11] Significantly, out of the total amount of the variable pay sum plaintiff would have received, only $7.17 would have been attributable to Boniva® sales.

Further, Sullivan's March 2005 letter to plaintiff's personnel file, allegedly containing criticism and negative rating of plaintiff

---

[11]Also for the first trimester of 2006 he would have received $671.51 for HCV screening.

are not adverse employment actions. See <u>Arrieta v. Yellow Trans.,</u> <u>Inc.</u>, 2008 WL 5220569, at *5 (N.D.Tex.2008) citing <u>Roberson v. Game</u> <u>Stop/Babbage's</u>, 152 Fed.Appx. 356, 360 (5th Cir.2005) (Court admonished "not to expand the definition of adverse employment action to include 'events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee-anything that might jeopardize employment in the future'"). Similarly, placing plaintiff on a PIP, the goal of which was to improve his performance and avoid his termination, is not an adverse employment action. See <u>Cannon v. St. Paul Fire and Marine Ins. Co.</u>, 2005 WL 1107372, at *3 (N.D.Tex.2005) (holding that requiring employee to participate in and complete PIP was not adverse employment action).

In addition, plaintiff's argument that the restructuring of the territories constitutes an adverse employment action does not pass muster. Notably, plaintiff does not claim he was placed in his territory for discriminatory reasons or that the territory was purposely formed to make his work more difficult or impractical. Plaintiff complained that his territory had an excessive number of physician targets and asked Sullivan and Burke to realign it. Defendant addressed his complaints by realigning the territories in the spring of 2006, within one year of his original complaint. The Court finds that plaintiff has failed to establish a prima facice case of adverse employment action.

### 3. Inference of Age Discrimination

### a. Plaintiff Was Hired while a Member of the Protected Class contradicting an inference of age discrimination

Plaintiff was hired by Roche in Texas at the age of 52 and in Rochester at the age of 59 years old, when he was already a member of the protected class. This fact negates any inference of age discrimination. In addition, plaintiff is currently 64 years old and still remains an employee of Roche to this day. All these facts cut against plaintiff's claim of an inference of discriminatory animus. See Bailey, 2006 WL 738435, at *4 ("Furthermore, even if plaintiff could prove that her performance was satisfactory, her prima facie case would fail because she cannot establish an inference that her discharge was related to age discrimination. Courts in this Circuit have recognized that any inference of age discrimination is undercut where, as here, a plaintiff is over 40 years old when she is hired"); Boyle v. McCann-Erickson, Inc., 949 F.Supp. 1095, 1104 (S.D.N.Y.1997) ("Plaintiff was hired at the age of 46...,a fact which undercuts an inference of age discrimination"); See Piasecki v. Daughters of Jacob Nursing Home, Inc., 808 F.Supp. 1136, 1141 (S.D.N.Y.1992) ("While the fact that [employer] hired plaintiff at age 70, when he was well within the protected class, suggests a non-discriminatory intent"); Melnyk v. Adria Lab., 799 F.Supp. 301, 319 (W.D.N.Y.1992) (plaintiff failed to establish prima facie case given that she was hired at 39, one year prior to entry into protected class).

### b.   Isolated Comment

Moreover, plaintiff has failed to offer any evidence that any employees ever made comments specifically about his age. His claim of age discrimination seems to rest on a supervisor's comment to other people and not to the plaintiff personally that "in my experience older workers are just hanging around for retirement and need to be constantly challenged." However, this basis is not sufficient.

While an employer's remarks may give rise to an inference of discrimination, <u>Gregory v. Daly</u>, 243 F.3d 687, 697 (2d Cir.2001), the discriminatory comment alleged here is supported, in significant part, by hearsay statements. <u>See</u> W.D.N.Y. Loc. R. 56.1 (requiring that plaintiff support his assertions of material fact with citation to admissible evidence); <u>see</u> <u>also</u> <u>Cooper v. John D. Brush & Co</u>, 242 F.Supp.2d 261, 270 (W.D.N.Y.) (plaintiff's submission of an alleged comment reported to plaintiff by another co-worker who claimed he heard the supervisor call a third employee a racial epithet was inadmissible hearsay); <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 71 (2d Cir.2000) ("while second-hand comments may be relevant, a district court deciding a summary judgment motion must be provided with admissible evidence demonstrating the truth of the non-movant's assertions"). Here, plaintiff has not provided an affidavit from either of his co-workers who allegedly heard

Sullivan's statement. Accordingly, Sullivan's comment is inadmissible hearsay.[12]

Even crediting plaintiff's assertions however, based on the evidence, the allegedly discriminatory comment by Sullivan nevertheless was one isolated statement made during the length of the employment relationship. Absent further indicia of discrimination, such an allegation is insufficient to establish an inference of discrimination. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir.2001) ("[S]tray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination.") Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir.1998) (isolated statements, "cannot get a discrimination suit to a jury"); Woroski v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir.1994) (stray remarks, without more, cannot prove a claim of employment discrimination); Bailey, 2006 WL 738435, at *4 ("[S]tray comments...without some demonstrable connection to plaintiff's discharge, are insufficient to give rise to an inference of discrimination"). Moreover, it was not made about plaintiff, not made in the presence of plaintiff, to anyone with authority over plaintiff or in connection with any

---

[12]Plaintiff argues that the alleged comment would be admissible as an admission against interest. See Pl. Opp. Br. at 8. However there are two levels of declarants here, Sullivan and the two representatives and both levels must be subject to hearsay exceptions for the comment to be admissible. The comment, as said by Sullivan, is not hearsay, because plaintiff is not submitting it for the truth of the matter asserted (that older workers need to be challenged). The comment, as retold by Dewey and Gagney ("Sullivan said that..."), however, is inadmissible hearsay, as plaintiff is trying to submit it for its truth, that Sullivan indeed made the comment. See Vilien v. Dep't of Educ., 2009 WL 857458, at *4 (S.D.N.Y.2009) (statement of supervisor relayed to plaintiff by another person was inadmissible hearsay). Accordingly, the admission against interest exception is in applicable to Gagney's or Dewey's statements, and no other hearsay exceptions apply. See Fleming v. MaxMara, USA, Inc., 644 F.Supp.2d 247, 259 (E.D.N.Y.2009) (Although underlying statement was not hearsay, statement as retold by coworker was hearsay subject to no hearsay exceptions).

adverse employment action against plaintiff. There is not even a connection between the comment and plaintiff. In fact, out of the nine representatives supervised by Sullivan, five in addition to plaintiff were members of the same protected class, and none have made claims of age discrimination. Accordingly, such a remote comment cannot create an inference of discrimination. Thus, Sullivan's comment is insufficient to support plaintiff's prima facie age discrimination claim.

### 4.    Personality conflicts do not establish discrimination

Plaintiff states that contrary to defendant's contention, his relationship with Sullivan was not a "mutual" personality conflict, but it was only Sullivan who disliked him. See Pl. Opp. Br. at 7. Assuming arguendo the dislike was one-sided, which is not supported by the undisputed facts, the Court finds that the ADEA is not aimed at policing personalities in the workplace, rather the goal is addressing discrimination. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (human rights laws are not a civility code for the workplace, but rather seek to address the harms of discrimination); see also Wilson v. Family Dollar Stores of New York, Inc., 2008 WL 4426957, at *8 (E.D.N.Y.2008) (While a supervisor's behavior may be "rude and unprofessional, it merely indicates personal enmity rather than discrimination and thus does not violate Title VII"); Brown v. Society for Seaman's Children, 194 F.Supp.2d 182, 192 (E.D.N.Y.2002) ("Plaintiff's complaints, in turn, that [the supervisor] was rude, threatening and combative toward her evidences the hostility between them, but does not provide ground for inferring that the hostility stemmed from plaintiff's race or gender").

In this case, plaintiff testified that Sullivan disliked him because he was under the impression that plaintiff did not shake his hand when they first met. The Field Coaching Reports exhibit the contentious relationship and show the hostile tone that plaintiff took to dispute Sullivan's evaluations. The apparent dislike of both plaintiff and Sullivan for each other, absent any claim of age-related animus, is not the province of the ADEA. Moreover, while plaintiff claims that he was treated differently from other employees, he also asserted that co-workers requested that he talk to Sullivan about his management style and policies, because representatives of all ages found it difficult to work for Sullivan. This negates that Sullivan's interactions with plaintiff were fueled by any age-related discriminatory animus. See Stofsky v. Pawling Cent. School Dist., 635 F.Supp.2d 272, 294 (Finding that "[s]imply put, there is no admissible evidence from which a jury could reasonably infer that Plaintiff was mistreated on account of her gender or age," since supervisor was equally as demanding of younger men and of older women).[13] Accordingly, as neither policing the personal conflicts of Sullivan and plaintiff, nor addressing Sullivan's managerial style, is withing the scope of the ADEA, none of the evidence supports an inference of discriminatory animus.

---

[13]Plaintiff also cites the performance of James Mateer, another Rochester representative, to support his allegations of differential treatment. As admitted by plaintiff, Mateer performed better than him, and thus, they were not similarly situated. See Szarzsynski Aff., ¶82). Further, plaintiff claims that Mateer was around 45 years old in 2005 (he was actually 49). See id. Accordingly, Mateer, like plaintiff was a member of the ADEA age protected class. That Mateer allegedly received no negative reviews or letters negates plaintiff's assertions that Sullivan treated members of the age protected class in a different manner.

## B.  Legitimate, Non-Discriminatory Reason and Pretext

Even if plaintiff had stated a prima facie case of discrimination, defendant had LNDRs for its actions. <u>See</u> Def. Br. at 16. Defendant further contends that plaintiff does not establish that Roche's legitimate reasons for its actions were pretextual. <u>See</u> Def. Reply Br. at 9; <u>see also</u> <u>St. Mary's Honor</u>, 509 U.S. at 502; <u>Reeves</u>, 530 U.S. at 246 (burden of production shifts back to plaintiff to show that employer's stated reason was merely a pretext and that retaliatory animus was the true reason for employer's actions).

Plaintiff does not deny that he was ranked last in the Mid-Atlantic region in Boniva® sales. Indeed, he admits that "based on market share," the measure used to rank representatives across the nation, "I was not performing well." In this regard, plaintiff was simply expected to perform pursuant to the same standards applicable to all representatives. Plaintiff was rated using the same mathematical formulas and standards that apply to every Roche representative. Accordingly, defendant had ample justification for placing plaintiff on a PIP and had legitimate reasons for refusing to give him a performance-based salary increase or variable pay. The increase in his salary was discretionary, and was not given to him because of well-documented performance deficiencies. <u>See</u> <u>Skiff v. Colchester School Dist.</u>, 316 Fed.Appx. 83, 84 (2d Cir.2009) ("the role of the courts is "not to act as a 'super personnel department' that second guesses employers' business judgments"). It was defendant's policy that an employee could not receive variable pay for any trimester in which he was on a PIP. There is no indication

that defendant applied this policy in a discriminatory manner towards plaintiff. Thus, defendant articulated LNDR for its actions.

Further, plaintiff disagreed with the rating procedures and believed that his rating was unfair under the circumstances. In addition, plaintiff claims that the goals of the PIP were unattainable. However, plaintiff's claims are of no import. See Karla v. HSBC BankUSA, N.A., 567 F.Supp.2d 385, 397 (E.D.N.Y.2008) ("the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination"); Ricks v. Conde Nast Publ'ns., Inc., 92 F.Supp.2d 338, 347 (S.D.N.Y.2000) ("The mere fact that an employee disagrees with her employer's assessments of her work...cannot[,] standing on its own[,] show that her employer's asserted reason[s] for termination [were] pretextual.") (internal citation omitted). Moreover, plaintiff constantly claimed that the actions taken by defendant were meant to build a file for his ultimate termination and he was certain a younger representative would replace him. However, the fact that plaintiff was taken off the PIP without being terminated and remains a Roche employee four years after the alleged efforts by Roche to prepare for his termination, directly negates any finding of discrimination.

Pursuant to a recent Supreme Court decision, a plaintiff claiming discrimination under the ADEA must demonstrate, by a preponderance of the evidence, that age was not merely a motivating factor, but it was a "but for" cause of the challenged employer

action. <u>See</u> <u>Gross v. FBL Fin. Servs.</u>, 129 S.Ct. 2343, 2350 (2009). Defendant argues that plaintiff cannot prove that age motivated, much less was the "but for" cause of, and the challenged action by Roche. The Court agrees. Defendant articulated LNDRs for its actions. Defendant's proffered explanations were supported by plaintiff's poor work performance. In addition, plaintiff has offered nothing but excuses in opposition to this motion. Simply put, plaintiff provided no evidence to support his conclusory assertions that defendant's explanations were pretextual. Consistent with that conclusion, the record lacks evidence from which a fact finder could conclude that age-related animus was the "but-for" cause of plaintiff's termination. <u>See</u> <u>id.</u> at 2351; <u>Wellesley v. Debevoise & Plimpton LLP</u>, 2009 WL 3004102 at *1 (2d Cir.2009). Based on the foregoing, there is no genuine issue of material fact regarding plaintiff's discrimination claim, and Roche is entitled to summary judgment.

### III. <u>Plaintiff's Retaliation Claim</u>[14]

To establish a prima facie case of retaliation, a plaintiff must demonstrate by a preponderance of the evidence that: (1) he engaged in a protected activity; (2) the employer was aware of his activity; (3) the employer took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. <u>See</u> <u>Sengillo v. Valeo Elec. Systems, Inc.</u>, 328

---

[14]Retaliation claims are analyzed within the familiar burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>. <u>McDonnell Douglas</u>, 411 U.S. at 792. On a motion for summary judgment, the plaintiff must first establish a prima facie case of retaliation. Once the plaintiff has done so, the burden shifts to the defendant to establish a legitimate non-retaliatory reason for the complained-of action. If the defendant does so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. <u>See</u> <u>Schnabel</u>, 232 F.3d at 90; <u>Gallagher v. Delaney</u>, 139 F.3d 338, 349 (2d Cir.1998).

Fed.Appx. 39 , 41 (2d Cir.2009); <u>Richardson v. Comm. on Human Rights</u> <u>& Opportunities</u>, 532 F3d 114, 123 (2d Cir.2008); <u>Sista v. CDC Ixis N.</u> <u>Amer., Inc.</u>, 445 F.3d 161, 177 (2d Cir.2006); <u>Holt v. KMI-</u> <u>Continental</u>, 95 F.3d 123, 130 (2d Cir. 1996), <u>cert</u>. <u>denied</u>, 1997 WL 71191 (1997). Defendant contends that as to the first two elements, Roche concedes that plaintiff engaged in a protected activity when he complained of discrimination to the HR department in November 2005. <u>See</u> Def. Br. at 9. However, defendant claims that plaintiff's March 2005 complaint to HR did not constitute protected activity. <u>See</u> <u>id.</u> In addition, defendant argues that plaintiff cannot establish a prima facie case of retaliation because the purported "retaliatory" acts do not qualify as "adverse employment actions" and because there is no causal connection between his complaint and the employment decisions that affected him. <u>See</u> <u>id.</u> Plaintiff argues that Sullivan's March 2005 letter and the PIP were adverse employment actions. <u>See</u> Pl. Opp. Br. at 22.

### A. Plaintiff has failed to establish a Prima Facie Case of Retaliation

### 1. Plaintiff has failed to allege that she engaged in a protected activity.

On March 1, 2005, Sullivan wrote a letter to plaintiff, which was copied to Human Resources ("HR") and Burke, indicating that plaintiff failed a required quiz which tested his knowledge of osteoporosis. The letter also stated that plaintiff's call activity for the first trimester was below expectations. Plaintiff responded by letter dated March 12, 2005 requesting that the March 1, 2005 letter be removed from his file. Plaintiff asserts that one of the basis for defendant's alleged retaliation is the March 12, 2005 he

wrote requesting that the March 1, 2005 letter by Sullivan be removed from his file. Plaintiff's letter, however, makes no reference to his age or alleged discrimination claim.

There is no admissible evidence in the record suggesting that the plaintiff complained of unlawful discrimination on the basis of age in the March 12 letter. Accordingly, the letter does not constitute the "protected conduct" required for a prima facie case of retaliation. See Harrison v. New York City Housing Auth., 2001 WL 1658243, at *3 (S.D.N.Y.2001) (court held plaintiff's letter did not constitute "protected conduct" required for a prima facie case of retaliation since it did not pertain to plaintiff's disability, but instead, claimed that she was being harassed for "unknown reasons"); citing Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir.1998) (affirming JNOV for employer for retaliation claim under Title VII, where plaintiff's complaints that co-workers were "slackers" and that she was required to do personal work for an executive on company time could not reasonably lead her employer to conclude that her complaints were based on allegations of gender discrimination); Int'l Healthcare Exchange, Inc., v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 357 (S.D.N.Y.2007) (to be considered protected activity, the employee's complaint must put the employer on notice that discrimination prohibited by Title VII is occurring); Ramos v. City of New York, 1997 WL 410493, at *3 (S.D.N.Y.1997) (stating that "when complaining about a supervisor, in order to be protected activity the complainant must put the employer on notice that the complainant believes that discrimination is occurring").

According to the plaintiff's deposition testimony, Szarzynski did not believe that Sullivan's action relating to the March 1, 2005 letter incident was instigated by discriminatory animus until August 2005, after hearing about the alleged comment by Sullivan.[15] In addition, plaintiff stated he felt Sullivan's letter was "a little bit out of the ordinary. Not good business practice," but at that time he did not believe it had to do with his age. Plaintiff was merely complaining of behavior he thought was unfair to him or uncalled for, but not discriminatory. At no time during this period did plaintiff allege that he was being treated differently because of his age. Thus, plaintiff's March 2005 complaint does not constitute protected activity.[16] <u>See Ochei v. Coler/Goldwater Memorial Hosp.</u>, 450 F.Supp.2d 275, 287 (S.D.N.Y.2006) (plaintiff's general complaints about her working conditions did not constitute engaging in a protected activity where plaintiff did not allege that she was a victim of discrimination); <u>Holt v. Roadway Package Systems, Inc.</u>, 506 F.Supp.2d 194, 206 (W.D.N.Y.2007) (employee's claim that supervisor

---

[15]During his deposition, plaintiff testified:

Q.   Do you have any reason to believe that Mr. Sullivan was building a record against you based on your – on that March 2005 letter, that that had anything to do with your age?

A.   I – at that time, no. Subsequent to that, yes.

Q.   Because of the comment that was attributed to Mr. Sullivan?

A.   Yes.

<u>See</u> June 29, 2009 Declaration of Susan C. Roney ("June Roney Decl."), Ex. D.

[16]Even assuming that plaintiff's complaint constituted protected activity, plaintiff cannot establish any causal connection between this complaint and the PIP, which was seven months later. A plaintiff may allege proof of causation indirectly by showing close temporal proximity between the protected activity and the discriminatory treatment. <u>See</u> <u>Gordon v. New York City Bd. of Ed.</u>, 232 F.3d 111, 115 (2d Cir.2000). Several courts in this Circuit have held that where an adverse employment action occurs long after the plaintiff engaged in a protected activity, such an action cannot support an inference of retaliatory discrimination. <u>See</u> <u>Yarde v. Good Samaritan Hosp.</u>, 360 F.Supp.2d at 552, 562 (S.D.N.Y.2005) ("[t]hree months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation. Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation"); <u>Cunningham v. Consol. Edison Inc.</u>, 2006 WL 842914, at *19 (E.D.N.Y.2006) (three months too remote and "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); <u>Hollander v. Am. Cyanamid Co.</u>, 895 F.2d 80, 85 (2d Cir.1990) (three months too remote); <u>Woods v. Enlarged City Sch. Dist. of Newburgh</u>, 473 F.Supp.2d 498, 529 (S.D.N.Y.2007) (five month time lapse precludes a finding of causal connection).

was "out to get him" did not constitute protected activity as complaint did not allege discriminatory animus for supervisor's actions).

Further, plaintiff alleges that Sullivan made the statement about "older workers" to Gagne and Dewey in August 2005. On October 11, 2005 Burke and Sullivan met with plaintiff to inform him that he would be placed on PIP. It was not until after plaintiff was informed of the PIP during the October 2005 meeting that he complained to her about the alleged August 2005 statement. Accordingly, plaintiff, allegedly knowing of this remark for two months, made no complaint about it until after he was placed on a PIP, and only then claimed that the remark rose to the level of age discrimination. Thus, plaintiff's PIP placement could not be retaliatory since plaintiff had not yet engaged in any protected activity as of the commencement of the PIP.

Moreover, instead of terminating plaintiff on December 9, 2005 for not achieving the goals of the PIP, Sullivan met with plaintiff to expand the PIP. Plaintiff was allowed until January 31, 2006 to meet the reduced goals of the PIP Addendum. In fact, plaintiff admitted that the call requirement goals of the PIP Addendum were "fair and reasonable." Accordingly, the PIP extension cannot be considered retaliatory. In fact, plaintiff was taken off the PIP on January 31, 2006, was never terminated, and continues to work for Roche to this day. Thus, plaintiff has not satisfied the first element of the prima facie case.

**2. Plaintiff has failed to establish that he was subjected to an adverse employment action.**

To state a prima facie case of retaliatory discrimination, in addition to establishing that he or she engaged in protected activity, a plaintiff must also establish that he or she suffered an adverse employment action, or was subjected to action that would dissuade a reasonable worker from making or supporting a charge of discrimination. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Defendant contends that plaintiff's complaint fails to allege evidence establishing an adverse employment action.

To demonstrate the occurrence of an adverse employment action, plaintiff must show that she suffered "a 'materially adverse' change in the terms and conditions of employment." See Galabya, 202 F.3d at 640 (citing Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 446 (2d Cir.1999)). There is no bright-line rule as to what constitutes an adverse employment action. However, the Second Circuit has held that, in order to qualify as "'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" See Galabya, 202 F.3d at 640. In this regard, the Supreme Court also instructs that it is essential to distinguish "material adversity" from trivial harms." See Burlington N., 548 U.S. at 68.

Here, the undisputed facts show that plaintiff has not set forth a single adverse employment action that would entitle him to relief on his retaliation claim. Several of the actions complained of, including the failure to ask plaintiff for input regarding the realignment of territories, are so minor that they fail to satisfy the Burlington Northern standard for adverse employment actions.

Plaintiff argues that he was given a low performance rating for 2005 and this constitutes an adverse employment action. However, the fact that plaintiff was given a low rating for his overall performance in 2005 is not "materially adverse" and does not constitute an adverse employment action. See Mauskopf v. Dist. 20 of the New York City Dep't of Educ., 299 Fed. Appx. 100, 101 (2d Cir.2008) (plaintiff's unsatisfactory rating in her performance review, "without any accompanying evidence of negative consequences," does not demonstrate that plaintiff was discharged in retaliation for her intervening complaint alleging age discrimination). In addition, the mere fact that plaintiff was subjected to a performance review, similar to all of his co-workers, and placed on a PIP aimed at improving his performance, does not constitute an adverse employment action. See Gurry v. Merck & Co., Inc., 2003 WL 1878414, at *5 (S.D.N.Y.2003)(finding that the plaintiff's performance evaluation, which contained both positive and negative elements and PIP, did not constitute an adverse employment action and granting summary judgment for employer dismissing employee's retaliation claims).

### 3. Plaintiff has failed to establish a causal connection between his complaints and any alleged employment action

In order to establish a causal connection, "a plaintiff must be able to provide either direct evidence of retaliatory animus or make an indirect showing that a protected activity 'was followed closely by [retaliatory] treatment.'" Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991) (citing De Cintio v. Westchester County Med. Ctr., 821 F.2d 111 (2d Cir.1987), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987)). Defendant argues that plaintiff is unable to establish either and thus his retaliation claims fail as a matter of

law. See Def. Br. at 22. This Court agrees. Assuming arguendo that plaintiff experienced an adverse employment action, there is no nexus that exists between any protected activity and these actions that would allow an inference of retaliation. Further, the alleged employment action predates any protected activity. Thus, plaintiff fails to make out a prima facie case of retaliation because he cannot show a causal connection.

It is undisputed that plaintiff complained of age discrimination to the HR department for the first time in November 2005, after being placed on the PIP. Accordingly, placement on the PIP in October 2005 (one month before his complaint) cannot logically be an effect of his future complaint of retaliation. In addition, complaints regarding plaintiff's performance began as early as March 2005 and continued through his mid-year evaluation and PIP, all before he complained to HR about discrimination in November 2005. Moreover, the 2005 performance rating is nothing more than a culmination of these previous reviews that started before plaintiff engaged in any protected activity. Accordingly, this does not give rise to an inference of retaliation. See Papasmiris v. District 20 of New York City Dep't of Ed., 299 Fed.Appx. 97, 99 (2d Cir.2008) (Court granted summary judgment in employer's favor in plaintiff's retaliation claim finding that "gradual adverse job actions [that] began well before the plaintiff had ever engaged in any protected activity" do not give rise to an inference of retaliation") quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir.2001). Similarly, since past actions cannot logically be made in retaliation for future

protected activity, plaintiff's retaliation claim fails as a matter
of law.

Because I find that plaintiff has failed to state a prima facie
claim for retaliation, I grant defendant's motion for summary
judgment.[17]

## IV. **Plaintiff's Damages and Emotional Distress Claims**

### A. **Punitive Damages Claim**

Plaintiff requests punitive damages. However, punitive damages
are not recoverable under the ADEA. See Johnson v. Al Tech
Specialties Steel Corp., 731 F.2d 143, 147-148 (2d Cir.1984); Boise
v. N.Y.U., 2003 WL 22390792, at *3 (S.D.N.Y.2003).[18] Instead, for
non-willful violations of the ADEA only reinstatement and backpay are
allowed. See 29 U.S.C. § 626(b); Johnson, 731 F.2d at 147-148; Hatter
v. Fulton, 1997 WL 411623 at *6 (S.D.N.Y.1997), aff'd,165 F.3d 14 (2d
Cir.1998) (ADEA does not provide for punitive damages, rather it
permits remedies such as back pay, front pay, and reinstatements).[19]
Because plaintiff's demand for punitive damages is not cognizable
under the ADEA, defendant is entitled to summary judgment as a matter
of law.

---

[17]As stated above (Point II.B), defendant has advanced a legitimate non-discriminatory/non-retaliatory reason for its actions, and plaintiff cannot refute it as pretextual. Accordingly, summary judgment is appropriate on plaintiff's retaliation claim.

[18]It is undisputed that the NYSHRL also does not provide for punitive damages. See Weissman v. Dawn Joy Fashions, 214 F.3d 224, 235 (2d Cir.2000) (citing Thoreson v. Penthouse Int'l, Ltd., 80 N.Y.2d 490 (1992)).

[19]For willful violations of the ADEA, the statute only allows liquidated or double damages, which are considered punitive in nature. See Trans World Airlines Inc. v. Thurston, 469 U.S. 111 (1985). Accordingly, punitive damages for federal retaliation claims under Title VII are limited "to cases in which the [defendant] has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 529-30 (1999) (internal quotation marks omitted). "Malice and reckless indifference refer to 'the [defendant's] knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'" Farias, 259 F.3d at 101 (quoting Kolstad, 527 U.S. at 535). Here, the record is devoid of any evil intent, malice or reckless disregard for plaintiff's federally protected rights.

### B.   Emotional Distress Claim

Plaintiff asserts an emotional distress claim. Defendant contends that plaintiff abandoned this claim because plaintiff did not even respond to any of the undisputed facts in the defendant's Statement of Undisputed facts relating to his claim for emotional distress and did not respond to defendant's arguments concerning this claim in his opposition to defendant's summary judgment motion. Defendant asks the Court to grant summary judgment on this basis.

While courts generally consider claims waived or abandoned when not fully briefed on a summary judgment motion, it is not required to do so. <u>See</u> <u>Barlow v. Connecticut</u>, 319 F.Supp.2d 250, 266-67 (D.Conn.2004) (Courts may deem abandoned any claims not fully briefed in a motion for summary judgment); <u>see</u> <u>also</u> <u>Blouin ex rel. Estate of Pouliot v. Spitzer</u>, 356 F.3d 348, 363 n. 9 (2d Cir.2004); <u>Arbercheski v. Oracle Corp.</u>, 2005 WL 2290206, at *3 (S.D.N.Y.2005) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed"). Rather, it is in the discretion of the court. <u>See</u> <u>Lipton v. County of Orange</u>, 315 F.Supp.2d 434, 446 (S.D.N.Y.2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citations omitted); <u>see</u> <u>also</u> <u>Abbatiello v. Monsanto Co.</u>, 522 F.Supp.2d 524, 530 (S.D.N.Y.2007); <u>In</u>

re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig., 2007 WL 2694469 at *6 (S.D.N.Y.2007).

In Taylor v. City of New York, the court stated that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." See Taylor, 269 F.Supp.2d 68, 75 (E.D.N.Y.2003); see also Ostroski v. Town of Southold, 2006 WL 2053761, at *10 (E.D.N.Y.2006). In the present case, defendant moved for summary judgment, but the plaintiff did not address the defendant's argument concerning the emotional distress claim in its response to the summary judgment motion. As a result of plaintiff's failure to respond to the defendant's argument, the court finds that the plaintiff abandoned the claim relating to emotional distress and thus defendant's motion for summary judgment with respect to this claim is granted.

## CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Amended Complaint in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca<br>
Michael A. Telesca<br>
United States District Judge

DATED:    Rochester, New York<br>
            March 1, 2010